WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley R. Blansette, | No. CV-17-02878-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Scottsdale Housing Agency, et al., | |
| Defendants. | |

Pending before the Court are (1) Defendant City of Scottsdale's (the "City") motion for summary judgment (Doc. 36) and (2) Plaintiff Bradley R. Blansette's ("Blansette") revised motion for sanctions (Doc. 46).[1] For the following reasons, and although the Court has endeavored to liberally construe Blansette's filings and arguments in light of his status as a *pro se* litigant, the Court grants the City's motion and denies Blansette's motion.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed.

### A. **The City's Housing Choice Voucher Program**

The City's Housing Choice Voucher Program (the "Program") is managed in conjunction with federal assistance through Section 8. (Doc. 36-1 ¶ 2.) It is governed by an Administrative Plan (the "Administrative Plan"), adopted pursuant to 24 C.F.R. § 982

---

[1] Blansette filed his original motion for sanctions on January 7, 2019. (Doc. 39.) In his revised motion, Blansette notes that, other than the two new paragraphs he added at the beginning and the sentence he changed in the revised motion, he was "mak[ing] no changes to the original [m]otion." (Doc. 46 at 2.) Blansette also filed a motion for permission to make some of these minor changes. (Doc. 45.) Accordingly, the court will deny the original motion as moot (Doc. 39) and grant the motion to amend (Doc. 45).

and approved by the Department of Housing and Urban Development ("HUD"). (*Id.*)

In the last several years, the program has had more applicants than available vouchers. (*Id.* ¶ 3.) The City maintains a waiting list for new applicants in accordance with HUD regulations and the Administrative Plan. (*Id.*)

Disability is not a prerequisite to eligibility to participate in the Program. (*Id.*)

Because of the anticipated length of the waiting list, the City typically uses a two-step application process, under which an applicant will be required to provide sufficient information for the City to determine initial eligibility and the applicant's placement on the waiting list. (*Id.* ¶ 6.)

The Administrative Plan provides for three categories of preferences related to an applicant's position on the waiting list: 1) Live/Work in Scottsdale, 2) Elderly/Disabled, and 3) Homeless. (*Id.*) The applicant receives additional points for each preference that he or she establishes. (*Id.* ¶ 7.) A Program Specialist determines whether the applicant submitted sufficient evidence of disability but does not determine whether the applicant is "disabled." (*Id.* ¶ 9.)

B.     **Blansette's Application**

In August 2015, Blansette applied to the City to be placed on the waiting list for the Program. (*Id.* ¶ 8; Doc. 36-2.) Blansette did not indicate in his application that he would require accommodations for a disability to use the Program. (Doc. 36-1 ¶ 8; Doc. 36-2 at 8.)

During the processing of the initial application, Blansette provided a note from Paradise Valley Family Medicine that stated: "This patient has chronic pain present for years now. He is unable to work due to his pain and is seeing multiple specialists for this. He is also on pain medication to treat his pain." (Doc. 36-1 ¶ 9; Doc. 36-2 at 5.) A Program Specialist evaluated this note and determined it was insufficient to establish that Blansette was disabled for purposes of preference points on the waiting list. (Doc. 36-1 ¶ 9.)

Blansette also submitted to the City of Scottsdale Housing Agency ("SHA") a letter from the Social Security Administration, Office of Disability Adjudication and Review

"granting [his] request for more time before [it] act[ed] on [his] case" and informing him that he could " send [it] more evidence or a statement about the facts and the law in []his case." (Doc. 36-1 ¶ 10; Doc. 36-4.)

On September 14, 2015, the City notified Blansette that the documentation he had submitted was insufficient to establish a disability preference and invited him to submit a statement from a physician stating he was disabled. (*Id.* ¶ 11; Doc. 36-5.)

A note in Blansette's file indicates that he called the City on September 17, 2015 to explain that his doctor would not give him a disability letter, so he was looking for another doctor. (Doc. 36-1 ¶ 12; Doc. 36-5.) Blansette objects to this evidence on what appear to be authentication and hearsay grounds. (Doc. 47 at 4.)

The City did not receive any further documentation establishing that Blansette was disabled. (Doc. 36-1 ¶ 13.) Ultimately, Blansette's application received the preference points for Scottsdale residency but not for disability. (*Id.* ¶¶ 10, 13.) That did not, however, affect Blansette's eligibility for the Program. (*Id.* ¶ 13)

On October 7, 2016, Blansette was notified that he had reached the top of the waiting list. (*Id.* ¶ 14.) On October 25, 2016, he met with personnel from the SHA for the step-two eligibility interview. (*Id.*)

After Blansette's eligibility was confirmed, he was invited to attend a mandatory briefing process on November 17, 2016. (*Id.* ¶ 15.) During that process, he was provided a briefing packet. (*Id.*) Later that day, he was granted a housing voucher. (*Id.* ¶ 16.)

The voucher documentation specifically stated that the voucher would expire on January 16, 2017, unless Blansette requested an extension before that date. (*Id.* ¶ 17; Doc. 36-12.) Specifically, one of the documents provided:

> If you do not hand in an approved Moving Packet, a written request for an extension of time or a written notification that you plan to stay in your current unit by the deadline date of your voucher, your Housing Assistance will be terminated. You will be removed from the Housing Choice Voucher Section 8 Program effective the day after your voucher expires.

(*Id.* ¶ 18; Doc. 36-13.) At no time did Blansette indicate that he needed any form of accommodation to assist him in locating suitable Program-eligible housing. (Doc. 36-1

¶ 17.)

Recipients of housing vouchers are required to fill out and present to the SHA a Record for Search Housing Log before the expiration date of the voucher. (*Id.* ¶ 19.)

Blansette's voucher expired on January 16, 2017, because the City did not receive from him the Record for Search Housing Log or a written request to extend the voucher. (*Id.* ¶ 20.)

A little over two weeks later, on January 31, 2017, Blansette submitted a Request for Voucher Extension, in which he explained that he "had been delayed in submitting this request due to the recent death of a close friend" and that he was "delayed in the search for housing as [he was] waiting for a court decision on [his] disability case so that [he] may rent from family a location that is suitable for [his] needs." (*Id.* ¶ 21.) The request did not indicate that Blansette had made any effort to find housing or that he was prevented from locating housing in a timely manner because of a disability. (*Id.* ¶ 22.) Although pre-printed language on the request noted that a Record of Search for Housing form was attached, there was no such document attached. (*Id.* ¶ 21.)

Blansette's request was denied on February 6, 2017 because it was not timely and did not demonstrate good cause. (*Id.* ¶ 22.)

On February 7, 2017, the SHA sent a letter to Blansette advising him of the denial and further advising that he could apply again for the SHA's waiting list when it was open in the future. (*Id.* ¶ 23.) The City claims it does not have any record of receiving an appeal from this decision (*id.*), but Blansette attached to his revised motion for sanctions a document he claims was filed with the SHA on February 15, 2017, in which he stated he was "hereby formally appealing the denial of [his] extension request" (Doc. 46 at 2, 10). In that document, Blansette noted that he was a "disabled person." (*Id.* at 10.) Nonetheless, the Administrative Plan does not provide for such an appeal. (Doc. 36-1 ¶ 23.)

Because Blansette's voucher expired, the voucher was returned to the Program and reassigned to another participant on the waiting list. (*Id.* ¶ 24.)

# ANALYSIS

I. Summary Judgment

## A. **Legal Standard**

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . . [the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

B. **The Parties' Arguments**

Blansette seems to be arguing that the City violated Title II of the ADA for two reasons: (1) the City did not give him preference points on the Program waiting list for having a disability and (2) the City did not grant his untimely request for a voucher extension or allow him to appeal the denial of his extension request. (Doc. 47.)

In its motion for summary judgment, the City assumes that Blansette has a qualifying disability but argues his claims fail because: (1) "he was not denied the opportunity to participate in the Program"; (2) "the City acted properly in not giving Blansette preference points for a disability"; and (3) with respect to the untimely request for an extension, Blansette "fails to establish that the City violated any HUD rules or otherwise discriminated against him." (Doc. 36 at 8-14.)

C. **Analysis**

Title II of the ADA "applies to state and local governments." *Fortyune v. City of Lomita*, 766 F.3d 1098, 1101 (9th Cir. 2014). "It provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Cohen v. City of Culver City*, 754 F.3d 690, 694 (9th Cir. 2014) (quoting 42 U.S.C. § 12132). "To prevail under Title II, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen*, 754 F.3d at 695. As to the third requirement, the plaintiff must "prove that the exclusion from participation in the program was *solely* by reason of disability." *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978-79 (9th Cir. 1997) (citations and internal quotation marks omitted) (emphasis added). "[A] plaintiff may assert a discrimination claim under the ADA based on disparate treatment, disparate impact, or a failure to reasonably accommodate theory." *Burgess v. Hous. Auth. of Alameda Cty.*, 2006 WL 7347315, *8 (N.D. Cal. 2006).

### 1. Refusal to Award Preference Points for Disability

As an initial matter, the Court disagrees with the City's argument that, because Blansette eventually reached the top of the waiting list and was given a voucher, "he was not denied the opportunity to participate in the program." (Doc. 36 at 8.) Liberally construed, one of Blansette's arguments is that the City's failure to award disability-based preference points to him caused him to languish on the waiting list for too long. (Doc. 47 at 3 ["I was forced to wait an additional year before being awarded a housing voucher. Restricting access to programs for the disabled is discrimination per ADA rules."].)

Nevertheless, Blansette is not entitled to relief based upon his "refusal to award preference points" claim. As an initial matter, a public housing authority ("PHA") is not even required to award preference points for disability—the decision whether to do so is permissive. 24 C.F.R. § 982.207(b)(3) ("The PHA *may* adopt a preference for admission of families that include a person with disabilities.") (emphasis added). Thus, it is hard to see how any decision to refuse to award preference points for a disability to one individual can constitute discrimination based on disability.

Additionally, a PHA has great discretion in how it administers its programs. *See, e.g.*, *Jones v. Graziano*, 2013 WL 1459188, *2 (D. Md. 2013), *aff'd*, 541 F. App'x 325 (4th Cir. 2013) ("It is evident from the governing statutes that a [PHA] is vested with guided discretion to execute this nation's housing policies through various programs including Section 8, and it is beyond the purview of this Court to mandate that HABC exercise that discretion in a particular fashion to suit one individual."); *Kabando v. Prince William Cty. Office of Hous. & Human Dev.*, 2015 WL 7283116, *4 (E.D. Va. 2015) ("Due in large part to the fact that the need for housing vouchers vastly outstrips the supply of these vouchers, courts have granted great discretion to the public housing agencies and the Department of Housing and Urban Development in the means by which they administer the waiting list."). Here, the Administrative Plan required an applicant to establish disability for purpose of preference on the waiting list through either (1) a Social Security SSI or SSD award letter for the current year or (2) a letter from a doctor or a "medical accredited institute"

confirming the person is disabled. (Doc. 36-14 at 8.) It was within the SHA's discretion to require certain documentation to establish disability, and the SHA did not abuse its discretion in concluding the documentation Blansette provided was insufficient.

Third, and most important, the decision to deny preference points because of insufficient proof of disability cannot be characterized as discrimination *based on* disability. *Weinreich*, 114 F.3d at 979 (rejecting ADA claim, where plaintiff sought to challenge municipal transit authority's determination that he was ineligible for a reduced fare program available to disabled patrons, because the exclusion "was not based on the fact or perception that he has a disability" but "on his failure to provide updated certification that he has a qualifying disability").[2]

2.     Refusal to Grant Untimely Request for Extension

Blansette's challenge to the City's refusal to grant his untimely request for a voucher extension, or allow him to appeal this decision, seems to rely on a reasonable-accommodation theory. "[R]easonable modifications may be required when a [public entity] imposes a requirement that prevents qualified disabled people from having 'meaningful access' to a benefit *because of their disability*." *Weinreich*, 114 F.3d at 979 (emphasis in original).

To the extent Blansette lacked "meaningful access" to the Program after his voucher expired, he fails to show the reason for that lack of access was his disability. The City provided Blansette with documentation indicating that the voucher would expire on January 16, 2017 unless he requested a written extension and provided the SHA with a Record for Search Housing Log before the expiration date. (Doc. 36-1 ¶¶ 19-20; Doc. 36-12; Doc. 36-13.) Blansette does not provide any evidence showing he indicated, before the voucher expired, that he needed help searching for housing or completing a request for extension due to his disability. *Burgess*, 2006 WL 7347315 at *5 ("It is generally the

---

[2] Given *Weinreich*'s holding on this point, Blansette's allegations of document destruction and fabrication (Doc. 47 at 2-4) and arguments concerning the sufficiency of the disability documentation he submitted (*id.* at 2-3) are unavailing. Even accepting all of those assertions as true, Blansette still has not established that the denial of preference points constituted disability-based discrimination in violation of the ADA.

responsibility of the individual to request an accommodation unless the need for a particular accommodation is obvious; the ADA does not require clairvoyance."). To the contrary, he indicated in his application that he did not "require a specific accommodation for a disability in order to fully utilize the program and its services." (Doc. 36-2 at 8.) Thus, he cannot prevail on a reasonable-accommodation claim. *Cf. Kongtcheu v. Constable*, 2016 WL 270075, *5 (D.N.J. 2016), *aff'd*, 674 F. App'x 216 (3d Cir. 2016) (dismissing voucher claim because plaintiff did "not allege[] Defendant's failure to accommodate him was due to his disability").

Moreover, Blansette does not identify any specific accommodations the City should have provided to allow him "meaningful access" to the Program. *Wong v. Regents of Univ. of California*, 192 F.3d 807, 816 (9th Cir. 1999), *as amended* (Nov. 19, 1999) (noting that plaintiff "bears the 'initial burden of producing evidence' both that a reasonable accommodation exists and that this accommodation" would allow for participation in the program) (citation omitted); *Louis v. New York City Hous. Auth.*, 152 F. Supp. 3d 143, 155 (S.D.N.Y. 2016) (dismissing complaint because, among other reasons, "plaintiffs nowhere suggest accommodations that may have permitted them an equal opportunity to search for housing" and instead "simply assert that they have not had suitable housing because of NYCHA's failure to provide meaningful assistance in obtaining such housing").

Finally, given that a PHA is not required to provide a right of appeal in this circumstance, 24 C.F.R. § 982.555(b)(4) ("The PHA is not required to provide a participant family an opportunity for an informal hearing for . . . [a] PHA determination not to approve an extension of the voucher term"), Blansette has not shown that the City's decision to deny him an appeal and hearing was based on his disability.

II. Blansette's Revised Motion for Sanctions

Blansette moves for sanctions against the City for six reasons: (1) in its motion for summary judgment, the City claimed Blansette did not file an appeal of the City's decision to deny his request for an extension, but the City had, in fact, destroyed the appeal; (2) the City "committed the act of libel by impugning [his] honesty and good character by

implying that [he] made a fictitious statement about filing said Appeal, and other statements [he has] made"; (3) the City falsely stated that the "Scottsdale Housing Authority" doesn't exist; (4) the City submitted only portions of documents as exhibits to its motion for summary judgment; (5) the City filed too many pages with its motion for summary judgment and has sent too many pages of documents to Blansette; and (6) the City's "attorney has undertaken the most litigious route possible in this case" by not moving to dismiss under the Arizona notice of claim statute, A.R.S. § 12-821.01. (Doc. 46.)

Blansette's motion is without merit.

First, the Court will not impose sanctions for the appeal Blansette allegedly filed and the City allegedly destroyed. (Doc. 36 at 10.) The City stated its motion for summary judgment only that it "does not have any record of receiving an appeal from [its] decision" to deny his request for a voucher extension, not that Blansette failed to file an appeal. (Doc. 36 at 6, 12.) Blansette fails to show that the City lied or did anything to "impugn[]" his honesty. And even if the City intentionally destroyed this appeal, Blansette must show its relevance for the Court to impose sanctions. *Ritchie v. United States*, 451 F.3d 1019, 1024 (9th Cir. 2006) (noting that where party alleges destruction of particular documents, that party must "make a showing of relevance specific to the destroyed documents: The party must show that the document in question directly pertained to the disputed issue and could have supported its view of the facts"). An appeal filed a month after his voucher expired, when appeals of denied voucher extension requests are not even allowed, is not relevant to Blansette's claim. Moreover, even assuming some relevance, Blansette has not been prejudiced by the document's alleged destruction because he has a copy of the document. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (noting that "[i]n considering what spoliation sanction to impose, if any, courts generally consider," among other factors, "the degree of prejudice suffered by the opposing party").

Second, the Court declines to impose sanctions for the City's motion indicating that the "Scottsdale Housing Agency" is a non-jural entity. (Doc. 15.) The Court granted this

motion on October 12, 2018.  (Doc. 18.)

Third, the Court will not sanction the City for the number of pages it filed with the Court or produced to Blansette or for its submission of partial documents, given that the City has not violated any particular rule and Blansette has not shown any prejudice.

Finally, the Court will not impose sanctions for the City not moving to dismiss the case under Arizona's notice of claim statute, A.R.S. § 12-821.01, given that the statute only applies to state-law claims and Blansette's claims were all brought under federal law. *Harrison v. Dennerline*, 2015 WL 13322434, *5 (D. Ariz. 2015), *aff'd*, 670 F. App'x 587 (9th Cir. 2016) ("Arizona's notice-of-claim statute applies only to state-law claims . . . .").

Accordingly, **IT IS ORDERED** that:

1. The City's motion for summary judgment (Doc. 36) is **granted**;
2. Blansette's revised motion for sanctions (Doc. 46) is **denied**;
3. Blansette's initial motion for sanctions (Doc. 39) is **denied as moot**;
4. Blansette's motion to correct previous motion (Doc. 45) is **granted**; and
5. The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of April, 2019.

Dominic W. Lanza
United States District Judge